Frances COLLINS, Helen Preston, M. P. Corrado, Ruth Reber, Rose Gordon, Sylvia Petrovich, Johanna Bish, Ruth Regan, Yvonne R. Davis, Barbara Sobocinski, Patricia Crawford, Plaintiffs,

v.

PENNSYLVANIA TELEPHONE UNION, LOCAL NO. 1944, IBEW, AFL–CIO, and International Brotherhood of Electrical Workers, AFL–CIO, Defendants.

Civ. A. No. 76–674.

United States District Court,
W. D. Pennsylvania.

May 13, 1977.

As Amended May 23, 1977.

Emil R. Narick, Pittsburgh, Pa., for plaintiffs.

Stanley W. Greenfield, Pittsburgh, Pa., Paul M. Levinson, New York City, for Pa. Telephone Union, Local No. 1944.

Lawrence J. Cohen, Washington, D. C., for defendants.

## OPINION

WEBER, Chief Judge.

This is an action for damages by the plaintiffs under §§ 102 and 609 of the Labor-Management Reporting and Disclosure Act [LMRDA] [29 U.S.C. §§ 412 and 529] for infringement of plaintiffs' membership equality, freedom of speech and due process rights found in Title I of the Act, §§ 101(a)(1), (2) and (5), [29 U.S.C. §§ 411(a)(1), (2) and (5)]. The plaintiffs originally sought injunctive relief and compensatory damages. The request for injunctive relief was denied upon consideration of defendants' motion for partial summary judgment. *Collins v. Pennsylvania Tel. Union, Local No. 1944*, 418 F.Supp. 50 [W.D.Pa.1976]. Defendants have now moved for summary judgment as to all remaining issues before the court. Plaintiffs oppose this motion.

This lawsuit arose as the result of the alleged wrongful dismissal of local union members from their elective office. Frances Collins and Helen Preston were vice-president and treasurer, respectively, of their local union. Both of these plaintiffs were removed from office by the International Vice-President after a hearing on charges alleging violations of the union constitution while in office. The decision of the union's International Vice-President barred them from seeking union office for two years. The other plaintiffs join in the complaint on the grounds that the removal of Collins and Preston from office deprived rank and file members of their rights as union members under § 101.

Since the institution of this suit, three things have occurred; (1) the President of the International Union has lifted the two year suspensions of plaintiffs Collins and Preston on their right to represent the local union, thereby restoring their right to run for any union office; (2) this court has

dismissed plaintiffs' request for injunctive relief; and, (3) both Collins and Preston ran for local union office in November, 1976, Preston being elected vice-president and Collins losing her bid for union president.

■ As this court noted in its opinion denying injunctive relief, it is well settled in this circuit that the LMRDA protects the union-member relationship, not the union-officer or union-employee relationship. *Harrison v. Local 54 of American Federation of State*, 518 F.2d 1276 [3d Cir. 1975] *cert. denied* 423 U.S. 1042, 96 S.Ct. 764, 46 L.Ed.2d 631 [1976]; *Martire v. Laborers' Union 1058*, 410 F.2d 32 [3d Cir. 1969], *cert. denied* 396 U.S. 903, 90 S.Ct. 216, 24 L.Ed.2d 179 [1969]; *Sheridan v. United Brotherhood of Carpenters, etc.*, 306 F.2d 152 [3d Cir. 1962]. However, in opposition to defendants' motion, plaintiffs submit that, aside from the ruling of the court that plaintiffs are not afforded a remedy under § 101(a)(5) of the Act by reason of their removal from office, part of the penalty imposed on plaintiffs Collins and Preston by the union, which barred them from holding office for two years, is a deprivation of a right of union membership which affords the plaintiffs a remedy. Although the defendants refer to the union decisions as barring Collins and Preston from representing the union membership for a two year period, they dwell only on the "removal from office" aspect of the sanctions imposed. Defendants fail to note that in fact the plaintiffs Collins and Preston were prohibited from running for or holding office for the two year period. This fact is not disputed by the defendants.

## I.

With respect to those claims made by plaintiff union members in Count I of the complaints, we find a factual situation similar to the present one in a case not cited by either of the parties, *Schonfeld v. Penza*, 477 F.2d 899 [2d Cir. 1973]. In *Schonfeld*, the secretary-treasurer [Schonfeld] of a district council consisting of a group of locals of the International Brotherhood of Painters and Allied Trades, brought an action to restrain members of the district council trial board and the international president from enforcing a decision of the trial board removing Schonfeld from office and declaring him ineligible for union office for five years due to acts in violation of the constitution and by-laws of the International. In a related action [referred to as the "Schwartz action"], consolidated with the Schonfeld action, rank and file members of the locals sought to restrain the punishment of Schonfeld for his alleged union crimes. The district court granted the injunctive relief in both actions on the basis that Schonfeld's removal and disqualification for re-election was an interference with the rights of members of the locals "to choose their own representatives", 29 U.S.C. § 401(a), "to nominate candidates", 29 U.S.C. § 411(a)(1), "to vote in elections", *id.* and "to express any views, arguments, or opinions." 29 U.S.C. § 411(a)(2).

The Second Circuit disagreed with the district court in respect to jurisdiction of the Schwartz action insofar as it challenged Schonfeld's removal from office and ineligibility to run for future office.

"Title IV of the LMRDA, 29 U.S.C. § 481 et seq., governs the election of union officers and requires that union members have 'a reasonable opportunity . . . for the nomination of candidates . . . and . . . the right to vote for or otherwise support the candidate . . . of [their] choice.' 29 U.S.C. § 481(e). The union member's remedy for Title IV violations, following exhaustion of intra-union remedies, is to file a complaint with the Secretary of Labor, 29 U.S.C. § 482(a), who in turn may then seek relief in the federal courts upon finding or probable cause to believe Title IV has been violated." 477 F.2d at 902.

In *Schonfeld*, the rank and file members' Complaint relied on Title I and not Title IV of the LMRDA. The plaintiffs had failed to exhaust union remedies and file a complaint with the Secretary of Labor. In

*Calhoon v. Harvey*,[1] 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 [1964] the Supreme Court held that Title I rights are "no more than a command that members and classes of members shall not be *discriminated against* in their right to nominate." 379 U.S. at 139, 85 S.Ct. at 295 [emphasis added]. Schonfeld's exclusion from office eligibility did not affect or infringe on the "equal rights" of the complaining union members in the Schwartz action since they were not personally discriminated against. They had the same right as any other union member to nominate and elect any eligible candidate. To this extent, the Circuit Court found the Schwartz action "indistinguishable from *Calhoon*." 477 F.2d at 903, and without more, would have reversed the district court. However, the Complaint also alleged that the removal of Schonfeld and the restrictions on his subsequent eligibility constituted a form of intimidation of the membership and of their duly elected officers and amounted to reprisals for efforts of the plaintiffs in implementing and advocating change in the union structure and procedures. *Prima facie,* these additional allegations raised the question of whether the sanctions imposed on Schonfeld infringed on the rights of other union members protected under § 101(a)(2).

In Count I of the Complaint in the present action, plaintiff union members also allege that the defendants' conduct in removing plaintiffs Preston and Collins from office and their subsequent restrictions on eligibility for union office "constituted a veiled form of intimidation of and reprisals against the entire membership and of the duly elected officials for their efforts to advocate and seek changes in policy" (Complaint, par. 27) and thereby infringed upon the free speech and association rights of the members. Therefore, it would appear that a cause of action under the Act has been stated here since rights of free speech and of association—as opposed to the rights of voting and election—of union members may

have been invaded by the actions of the international officers, the requirement of initial appeal to the Secretary under Title IV being inapplicable. *Schonfeld v. Penza, supra.*

■ While *Schonfeld* made it clear that free speech rights of union members are not threatened or infringed every time a political dispute occurs in the union and dissident members interpret some action by union officials as a threat, the mere appendage of free speech allegations to a complaint is not sufficient to take the case out of Title IV's requirements as interpreted by *Calhoon*. However, where it is established by the record, as in *Schonfeld*, that the action of the union administration is part of an established and deliberate policy to suppress dissent, then a Title I claim is made out.

"The competing values between Title I rights and Title IV procedural requirements are best reconciled, in our opinion, by limiting initial federal court intervention to cases where union action abridging both Title I and Title IV can be fairly said, as a result of established union history or articulated policy, to be part of a purposeful and deliberate attempt by union officials to suppress dissent within the union [citations omitted]. We think that the allegations in the complaints here were sufficient to meet this test." 477 F.2d at 904.

■ In the present case, such "established union history or articulated policy . . . part of a purposeful and deliberate attempt by union officials to suppress dissent" is nowhere alleged. Here, the only allegation in the complaint is of an intraunion dispute involving the passage of a resolution requiring mandatory retirement of local union officials at the age of 65. While admittedly a considerable controversy over this matter may have existed among members of the local (this is denied in defendants' answer) such a dispute over the union's internal structure does not rise

---

1. In *Calhoon*, the Court held that Title I rights were not violated by restricting eligibility for elective office to five-year members of the national maritime union with 180 days or more of seatime service in each of the two preceding three years on unionized vessels. In *Calhoon*, the union members had to seek relief from the Secretary in the first instance.

to the level of infringement of union members' basic rights as protected to Title I of the Act, but are Title IV rights, as measured by the *Schonfeld* test, and therefore require an initial appeal to the Secretary of Labor. For this reason we lack jurisdiction over those claims made by the rank and file union members pursuant to the LMRDA regarding the removal and eligibility of Collins and Preston for union office. 29 U.S.C. § 482(a), *Calhoon v. Harvey, supra.* Accordingly, we dismiss Count I of this suit.

## II.

With reference to plaintiffs Collins and Preston, Count II of the complaint claims that the penalty imposed on them by the International Vice-President prohibiting them from holding elective office within the union for two years, was in contravention of their rights secured under § 101(a)(5) of the Act and therefore provides them with a remedy under the enforcement provisions of § 609. Thus, these plaintiffs claim that, having asserted a right under the Act for which a remedy is provided, and assuming the plaintiffs were denied a full and fair hearing as required by § 101(a)(5), summary judgment as to their claims, is not appropriate.

The right that Collins and Preston claim was violated by the higher level union officers is the right of any member to be a candidate for office. Collins and Preston contend that rendering a person ineligible from seeking union office, whether for five years or six months, affects that person as a *union member* and permits her under the Act to challenge the fairness of the procedures resulting in such political exile. Therefore, so say the plaintiffs, this court does have jurisdiction over their individual claims. *Schonfeld v. Penza, supra.*

In support of their position, Collins and Preston cite *Martire v. Laborers' Local Union 1058, supra.* In *Martire*, which involved an action by a suspended business manager of a local union brought against the local and international and pursuant to § 102 of the LMRDA, the Third Circuit reaffirmed the doctrine of *Sheridan* that neither Title I

nor § 609 of the LMRDA affords a remedy to a union officer removed from office prior to the expiration of his elected term. However, the court went on to hold that:

> "that part of the penalty imposed on Martire by the District Council which bars him from holding office in the Union for five years affects his status *qua* union member, and that circumstance affords him a remedy under Section 101(a)(5)." 410 F.2d at 35.

Since the penalty imposed in *Martire* is indistinguishable from the present sanction of Collins and Preston's eligibility for union office, we conclude that plaintiffs Collins and Preston have asserted a cause of action under Title I of the Act.

■ Summary Judgment is never warranted except on clear showing that no genuine issue of any material fact remains for trial after considering the pleadings and proof in the form of depositions, affidavits, and admissions on file. In determining the existence of a disputed issue of material fact, all inferences, doubts and issues of credibility should be resolved in favor of the nonmoving party. *Suchomajcz v. Hummel Chemical Co.,* 524 F.2d 19 [3d Cir. 1975]. *Tomalewski v. State Farm Life Ins. Co.,* 494 F.2d 882 [3d Cir. 1974].

■ Collins and Preston claim that, contrary to the contentions of the defendants, there are substantial and genuine factual questions existing as to the issue of whether the above plaintiffs received a full and fair hearing prior to the imposition of the election eligibility sanctions. If this is true, entry of summary judgment in favor of the defendants would be improper. However, consideration of this matter has become moot due to the fact that the International President has lifted these sanctions prior to the November election.

By letter dated October 10, 1975, certain members of plaintiffs' union filed charges against Collins and Preston alleging violations of various sections of the union's constitution. A decision by the International Vice-President on January 9, 1976, removed Collins and Preston from their elective offices and further ordered that they not be

permitted to represent the union in any manner for a period of two years. Subsequent to that decision, on June 25, 1976, the International President terminated that portion of the vice-president's decision prohibiting Collins and Preston from representing the union for a period of two years.[2] If the eligibility sanction had remained in effect, Collins and Preston would have been barred from running for local union office in the next election scheduled for late 1976. Elections of the local union were held in November of 1976. Helen Preston ran for and was elected vice-president and Frances Collins ran for but was defeated in her bid for the office of president. Since we can see no action on behalf of the union *actually* affecting Collins' and Preston's right to run for union office, such right being impaired only from January 9, 1976 through June 25, 1976, we must dismiss the remaining cause of action as moot.

Under Article III of the Constitution, federal courts have jurisdiction of actual cases and controversies. The controversy must exist at all stages of the litigation. *Prieser v. Newkirk*, 422 U.S. 395, 95 S.Ct. 2330, 45 L.Ed.2d 272 [1975]; *Defunis v. Odegaard*, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 [1974]; *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 [1973]. Under the facts of this case, we have no problem in concluding that the holding of the scheduled election and the participation of the "aggrieved" parties in that election has extinguished the underlying controversy and rendered this case moot as to all issues except the awarding of attorney fees.

### III.

The Complaint also requests this court to award plaintiffs "reasonable attor-

ney fees, cost of court and expenses herein." While the issue raised in Count II is now moot, it was viable up to the time the International President lifted the bar on Plaintiffs running for union office. An award of attorneys fees may be appropriate despite the fact that Plaintiffs have not been successful in the form of a judgment. [See *Brennan v. United States Steelworkers of America AFL–CIO–CLC*, 554 F.2d 586 (3d Cir. filed April 20, 1977)].

---

**2.** The letter of the International President, dated June 25, 1976, modifying that portion of the decision relative to Collins' and Preston's "prohibition from representing Local Union 1944 for a period of two years" [Defendants' Exhibits in Support of Summary Judgment] may be interpreted as permitting them to run for local union office, but, allowing the prohibition as to office in the international stand. The parties have not attributed this interpretation to the modification letter in their pleadings or briefs,

nor, does the Court. In their brief opposing summary judgment, the plaintiffs claim a remedy only "for that period which barred them from holding or running for *union* office for the period from January 9, 1976 to June 25, 1976, when the International President lifted that portion of the penalty barring *them* from running for *union* office." (emphasis added). This unqualified recital indicates that the prohibition against election for *any* union office was lifted.